UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| MICHELLA JORDAN,<br><br>                   Petitioner,<br><br>    v.<br><br>MICHAEL J. ASTRUE,<br>Commissioner of Social Security<br>Administration,<br><br>                 Respondent. | Case No. 1:09-CV-348-CWD<br><br>**MEMORANDUM DECISION AND ORDER** |

## INTRODUCTION

Pending before the Court for its consideration is the Petition for Review (Docket No. 1) of the Respondent's denial of social security benefits, filed by Petitioner Michella Jordan ("Petitioner") on July 15, 2009. The Court has reviewed the Petition for Review and the Answer, the parties' memoranda, and the administrative record ("AR"), and for the reasons that follow, will affirm the decision of the Commissioner.

**MEMORANDUM DECISION AND ORDER - 1**

## PROCEDURAL AND FACTUAL HISTORY

Petitioner filed an application for Disability Insurance Benefits and Supplemental Security Income on October 10, 2006, alleging disability due to seizures, headaches, and bipolar disorder with depression. This application was denied initially and on reconsideration, and a hearing was held on November 24, 2008, before Administrative Law Judge ("ALJ") John C. Arkoosh. ALJ Arkoosh heard testimony from Petitioner, vocational expert Anne Aestum, and medical expert Dr. Tom Atkin. ALJ Arkoosh issued a decision finding Petitioner not disabled on December 24, 2008, and Petitioner timely requested review by the Appeals Council, which denied her request for review on May 12, 2009. Petitioner appealed this final decision to the Court. The Court has jurisdiction to review the ALJ's decision pursuant to 42 U.S.C. § 405(g).

At the time of the hearing, Petitioner was thirty-six years of age. Petitioner has a high school education, and her prior work experience includes work as a Certified Nurse's Assistant ("CNA") and customer service representative.

## SEQUENTIAL PROCESS

The Commissioner follows a five-step sequential evaluation for determining whether a claimant is disabled. *See* 20 C.F.R. §§ 404.1520, 416.920. At step one, it must be determined whether the claimant is engaged in substantially gainful activity. The ALJ found Petitioner had not engaged in substantial gainful activity since her alleged onset date of February 28, 2006. At step two, it must be determined whether the claimant suffers from a severe impairment. The ALJ found Petitioner's bipolar disorder, anxiety

disorder, pseudo-seizure disorder, and personality disorder with cluster "B" features severe within the meaning of the Regulations.

Step three asks whether a claimant's impairments meet or equal a listed impairment. The ALJ found that Petitioner's mental impairments did not meet or equal the criteria for the listed impairments, specifically because her mental impairments did not satisfy either the paragraph B or paragraph C criteria in listing sections 12.04 and 12.06. If a claimant's impairments do not meet or equal a listing, the Commissioner must assess the claimant's residual functional capacity ("RFC") and determine at step four whether the claimant has demonstrated an inability to perform past relevant work.

The ALJ found Petitioner, due to her mental limitations, was not able to perform her past relevant work as a CNA, which is semi-skilled work. If a claimant demonstrates an inability to perform past relevant work, the burden shifts to the Commissioner to demonstrate at step five that the claimant retains the capacity to make an adjustment to other work that exists in significant levels in the national economy, after considering the claimant's residual functional capacity, age, education and work experience. At step five, the ALJ found that Petitioner had the ability, based upon her RFC, to perform other work that exists in significant levels in the national economy, such as cashier II, ticket taker, or survey worker, and therefore issued a finding that Petitioner was not disabled.

## STANDARD OF REVIEW

Petitioner bears the burden of showing that disability benefits are proper because of the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *see also* 42 U.S.C. § 1382c(a)(3)(A); *Rhinehart v. Fitch*, 438 F.2d 920, 921 (9th Cir. 1971). An individual will be determined to be disabled only if her physical or mental impairments are of such severity that she not only cannot do her previous work but is unable, considering her age, education, and work experience, to engage in any other kind of substantial gainful work which exists in the national economy.  42 U.S.C. § 423(d)(2)(A).

On review, the Court is instructed to uphold the decision of the Commissioner if the decision is supported by substantial evidence and is not the product of legal error.  42 U.S.C. § 405(g); *Universal Camera Corp. v. Nat'l Labor Relations Bd.*, 340 U.S. 474 (1951); *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999) (as amended); *DeLorme v. Sullivan*, 924 F.2d 841, 846 (9th Cir. 1991). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971).  It is more than a scintilla but less than a preponderance, *Jamerson v Chater*, 112 F.3d 1064, 1066 (9th Cir. 1997), and "does not mean a large or considerable amount of evidence."  *Pierce v. Underwood*, 487 U.S. 552, 565 (1988).

The Court cannot disturb the Commissioner's findings if they are supported by substantial evidence, even though other evidence may exist that supports the petitioner's claims. 42 U.S.C. § 405(g); *Flaten v. Sec'y of Health and Human Servs.*, 44 F.3d 1453, 1457 (9th Cir. 1995). Thus, findings of the Commissioner as to any fact, if supported by substantial evidence, will be conclusive. *Flaten*, 44 F.3d at 1457. It is well-settled that, if there is substantial evidence to support the decision of the Commissioner, the decision must be upheld even when the evidence can reasonably support either affirming or reversing the Commissioner's decision, because the Court "may not substitute [its] judgment for that of the Commissioner." *Verduzco v. Apfel*, 188 F.3d 1087, 1089 (9th Cir. 1999).

When reviewing a case under the substantial evidence standard, the Court may question an ALJ's credibility assessment of a witness's testimony; however, an ALJ's credibility assessment is entitled to great weight, and the ALJ may disregard self-serving statements. *Rashad v. Sullivan*, 903 F.2d 1229, 1231 (9th Cir. 1990). Where the ALJ makes a careful consideration of subjective complaints but provides adequate reasons for rejecting them, the ALJ's well-settled role as the judge of credibility will be upheld as based on substantial evidence. *Matthews v. Shalala*, 10 F.3d 678, 679-80 (9th Cir. 1993).

# DISCUSSION

Petitioner believes the ALJ erred at step four in assessing Petitioner's RFC. Specifically, Petitioner contends that the ALJ improperly rejected a treating source physician's opinion in favor of a non-examining reviewing source's opinion, without subtantial evidence in the record for doing so. Petitioner argues that if the ALJ had properly credited the opinion of Petitioner's treating physician, a finding of disabled would have been warranted based upon the Vocational Expert's opinion testimony.

## 1. Background

Dr. Foutz was Petitioner's treating physician since February 4, 2005. On October 17, 2008, Dr. Foutz completed a Mental Capacity Assessment Questionnaire, which form was provided to him by Petitioner's attorney. (AR 128–130, 718.) There are two opinions expressed by Dr. Foutz that are at issue. The first issue concerns Dr. Foutz's characterization of certain limitations as "moderate," and the second issue concerns his opinion that Petitioner would be absent excessively from work.

Dr. Foutz was of the opinion that Petitioner's mental limitations were "moderate" in the areas of her ability to remember due to medications, her ability to maintain attention and concentration, her ability to perform activities within a schedule, and her ability to maintain attendance. Dr. Foutz also categorized Petitioner's limitations as moderate with respect to her ability to complete a normal workday without interruption from psychologically based symptoms, or to complete a normal work week without interruptions from psychologically based symptoms. Finally, Dr. Foutz was of the opinion

that Petitioner would likely have three or more absences per month due to her psychological symptoms and require frequent breaks throughout the day. On the questionnaire Dr. Foutz completed, the term "moderate" was defined as "difficulty performing in this area up to one-third of the work day." (AR 718.) Based upon Dr. Foutz's assessment, the Vocational Expert testified at the hearing that Petitioner would be precluded from all employment because she would need an excessive amount of breaks during the work day and would miss more than two days of work each month. (AR 124–25, 131–32.)

At the hearing, medical expert Tom Atkin testified. He agreed with Dr. Foutz's medical assessment, but disagreed with Dr. Foutz's opinion that Petitioner would have three or more absences from work each month based upon the evidence in the record. (AR 115.) Dr. Atkin also disagreed with the definition of "moderate" as defined on the questionnaire Dr. Foutz completed. (AR 128–130.) While Dr. Atkin shared the opinion that Petitioner had "moderate" limitations in the same areas that Dr. Foutz noted, (AR 115), he disagreed that "moderate," as defined by Social Security Administration, would preclude work for up to one-third of each day. (AR 128–130.) Instead, Dr. Atkin testified that, in the mental health field, one would expect an "overall lowering" of performance throughout the day whereby functioning may be affected but not precluded, instead of a lack of functioning for a specific time period. (AR 129.)

To reconcile the two definitions, Dr. Atkin opined that "moderate" should be thought of as being "one-third less efficient in that area all the time," meaning the

individual generally could function and perform her job. (AR 130.) If that definition were accepted along with Dr. Atkin's opinion that Petitioner would not miss more than two days of work per month, the Vocational Expert testified that an individual with such a level of function would be able to maintain employment at an unskilled level. (AR 130–31.) If Dr. Foutz's definition was accepted, the Vocational Expert testified that an individual who was not functioning for one-third of the day and incurred excessive absences would be precluded from all work. (AR 130.)

The ALJ accepted Dr. Atkin's opinion and incorporated it into his RFC assessment. (AR 14.) The ALJ's RFC assessment noted that Petitioner could function, although she would be one-third less efficient, in the areas Petitioner suffered from moderate limitations. (AR 14.) In addition, the ALJ rejected Dr. Foutz's opinion that Petitioner would miss three or more days of work each month. Based upon the RFC assessment, the ALJ relied upon the opinion of the Vocational Expert and concluded that Petitioner was not precluded from all work and therefore was not disabled.

Dr. Foutz did not believe that Petitioner suffered any limitations from her physical symptoms and noted this on the questionnaire he completed on October 17, 2008, (AR 718, 724.) Therefore, the ALJ did not incorporate any physical limitations into his RFC other than the possibility of seizures based upon Petitioner's past medical history, preventing her from climbing ladders or operating hazardous machinery. Petitioner does not contest that aspect of the ALJ's RFC analysis, and Petitioner's physical symptoms therefore are not at issue.

**2. Standards for Evaluating Physician Testimony**

To determine whether the ALJ committed error in rejecting the opinion of Petitioner's treating physician, the Ninth Circuit has set forth a framework for evaluating physician opinion testimony. Ninth Circuit cases distinguish among the opinions of three types of physicians: (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (nonexamining physicians). *Lester v. Chatter*, 81 F.3d 821, 830 (9th Cir. 1995). Generally, more weight is accorded to the opinion of a treating source than to opinions of nontreating physicians. *Winans v. Bowen*, 853 F.2d 643, 647 (9th Cir.1987). If the treating physician's opinion is not contradicted by another doctor, it may be rejected only for "clear and convincing" reasons. *Baxter v. Sullivan*, 923 F.2d 1391, 1396 (9th Cir.1991). If the treating doctor's opinion is contradicted by another doctor, the Commissioner may not reject the treating physician's opinion without providing "specific and legitimate reasons" supported by substantial evidence in the record for so doing. *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir.1983). In turn, an examining physician's opinion is entitled to greater weight than the opinion of a nonexamining physician. *Pitzer v. Sullivan*, 908 F.2d 502, 506 (9th Cir.1990); *Gallant v. Heckler*, 753 F.2d 1450 (9th Cir.1984).

An ALJ is not required to accept an opinion of a treating physician if it is conclusory and not supported by clinical findings. *Matney ex rel. Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992). Additionally, an ALJ is not bound to a physician's

opinion of a petitioner's physical condition on the ultimate issue of disability. *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989). If the record as a whole does not support the physician's opinion, the ALJ may reject that opinion. *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004). Items in the record that may not support the physician's opinion include clinical findings from examinations, conflicting medical opinions, conflicting physician's treatment notes, and the claimant's daily activities. *Id.*; *Bayliss v. Barnhart*, 427 F.3d 1211 (9th Cir. 2005); *Connett v. Barnhart*, 340 F.3d 871 (9th Cir. 2003); *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595 (9th Cir. 1999).

Opinions of a nonexamining, testifying medical advisor may serve as substantial evidence when the opinions are supported by other evidence in the record and are consistent with it. *Morgan*, 169 F.3d at 600. "The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Morgan*, 169 F.3d at 600–01.

### 3. Analysis

The Court finds that the ALJ set forth specific, legitimate reasons for rejecting Dr. Foutz's conclusions based upon substantial evidence in the record. *See Orn v. Astrue*, 495, F.3d 625, 632 (9th Cir. 2007) (setting forth analysis for considering opinions of treating physicians and non-treating medical expert). Specifically, the ALJ relied upon Petitioner's treating counselor, Dr. Lee, who saw Petitioner throughout 2006; Petitioner's ability to run a Mary Kay business despite her limitations; Petitioners' lack of treatment for her seizure disorder after 2006; and her generally good performances on mental status

evaluations. (AR at 18). The ALJ's reasons are established in the record, as summarized below.

Petitioner's mental impairments appear in the record to be most severe during 2006, culminating in a suicide attempt on March 30, 2006. (AR 174.) Petitioner was diagnosed on November 16, 2006, with bi-polar disorder. (AR 204.) Also in April of 2006, Petitioner was hospitalized for severe abdominal pain, and was observed to have seizure-like activity during that hospitalization. (AR 223.) Petitioner underwent a battery of tests during her April 2006 hospitalization to diagnose the cause of her seizures and abdominal pain, and all tests resulted in normal findings. (AR 224.) While hospitalized, Petitioner again attempted suicide on April 5, 2006, and was thereafter transferred to an inpatient psychiatric facility for treatment. (AR 225.) Petitioner was discharged on April 10, 2006, with a diagnosis of major depressive disorder and benign physical findings, as doctors were unable to explain her documented physical symptoms. (AR 251.)

Petitioner continued to have seizure events witnessed by family members, noted in a follow up note by Dr. Mary River on June 28, 2006. (AR 269–70.) Her seizures were generally precipitated by a stressful event. To manage her stress, Petitioner began seeing a social worker, Mr. Lee, for treatment of her depressive disorder on April 12, 2006. (AR 338, 332.) On November 15, 2006, Petitioner was admitted again to the hospital to treat her increased anger, irritability, and mood swings. (AR 343.) Upon admission, it was noted that violent outbursts precipitated Petitioner's admission, and that she had not worked since her last admission in April of 2006 other than running her Mary Kay

business. (AR 347.)

While in the hospital, on November 16, 2006, Mr. Lee noted that Petitioner was working half-time running a Mary Kay business, which involved contact with the public. (AR 329.) In Mr. Lee's opinion, Petitioner could work if she chose to do so, and although he believed Petitioner needed continued psycho therapy, he did not believe her mental conditions would interfere with her ability to work. (AR 329.) After her discharge from the hospital, Petitioner's treatment provider noted on December 28, 2006, that Petitioner met her Mary Kay goals, and was working on a Mary Kay event that would take place that evening. (AR 408.)

Throughout 2007, progress notes indicated that Petitioner was doing well and primarily concerned her mental health status. For example, January and February 2007 progress notes indicated Petitioner was "doing well," her mood was "stable," and her medications were "working well." (AR 418.) In April and May of 2007, progress notes again indicated Petitioner was doing well, and her medications were controlling her mood and no longer affecting her memory as did previous medications. (AR 416.) On July 26, 2007, progress notes continued to indicate Petitioner was doing well, her medications were controlling her anxiety, and also that Petitioner had just returned from a Mary Kay conference in Dallas. (AR 413.)

Not until October 15, 2007, did Petitioner suffer another significant event. On October 15, 2007, Petitioner was admitted for a drug overdose with increased anxiety. (AR 420.) At that time, she was diagnosed with bi-polar disorder. Physicians chose to

admit Petitioner to the hospital to adjust her medications. (AR 421.) On November 16, 2007, Petitioner was discharged from the hospital in "stable" condition. (AR 423.) After her discharge, on October 29, 2007, Dr. Foutz noted that Petitioner's anxiety was under control. (AR 430.) On February 19, 2008, Petitioner's treatment provider noted that her mood was stable with periods of irritability and agitation, which periods were reduced by medication. (AR 575.)

Although Petitioner's physical symptoms were well documented in the record, no known etiology could be found to support her continued abdominal pain or her seizures in April of 2006. Petitioner underwent no further treatment for her seizure activity, and nothing appears in the record after April of 2006 documenting any prolonged treatment other than intermittent emergency room visits for abdominal pain until her surgery in June of 2008. (AR 672.) On June 3, 2008, Petitioner underwent surgery to remove her ovaries for treatment of pelvic adhesive disease, believed to be the cause of her abdominal pain that had flared up during February of 2008. (AR 672, 678, 679, 685, 696.) Thereafter, Petitioner developed complications from her surgery requiring additional treatment for infection at the incision site, (AR 641–672), but as far as her mood, Petitioner was noted during a follow up visit on June 25, 2008, to have no problems with her focus and concentration, an "euthymic" mood, and a positive outlook. (AR 573.)

Based upon the record summarized above, there is substantial evidence to support the ALJ's opinion that the majority of Petitioner's mental status evaluations revealed few problems and, with the exception of two psychiatric hospitalizations, generally

demonstrated positive mental health findings. (AR 13.) The ALJ found, consistent with the record, that Petitioner suffered from two episodes of decompensation, but that these episodes were not accompanied by "marked" limitations nor were they "repeated" other than the two occasions. (AR 13.) The ALJ determined also that, given Petitioner's reported limitations, her activities were not limited to the extent one would expect, identifying Petitioner's Mary Kay business, her ability to meet Mary Kay goals, her ability to interact well with others, and repeated comments in the medical record that consistently noted her improved mental health status, and mood stabilization with medication. (AR 15–16.) The ALJ therefore set forth specific and legitimate reasons supported by substantial evidence in the record to reject Dr. Foutz's opinions that Petitioner would be absent excessively from work and would be unable to function for a large period of the work day.

## CONCLUSION

Based upon the foregoing review of the record, the ALJ's reasons for disregarding the opinion of Petitioner's treating physician is legally sufficient. There is substantial evidence in the record to support the ALJ's conclusion that Petitioner is not disabled due to her mental impairments.

## <u>ORDER</u>

**NOW THEREFORE IT IS HEREBY ORDERED:**

1)      Plaintiff's Petition for Review (Dkt. 1) is **DISMISSED;**

2)      The Commissioner's decision finding that the Petitioner is not disabled

within the meaning of the Social Security Act is **AFFIRMED.**



DATED: September 27, 2010

Honorable Candy W. Dale
Chief United States Magistrate Judge